UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

CIVIL ACTION
NO.: 08-99S

RUSSELL SUMNER CORKUM,
Plaintiff,

V.

THOMAS NG, M.D.,
Defendant.

**PLAINTIFF, RUSSELL S. CORKUM'S, STATEMENT OF THE CLAIM**

The plaintiff, Russell S. Corkum, hereby files this Statement of the Claim pursuant to the Court's Order of July 29, 2008.

## I. DESCRIPTION OF THE CASE

This is a medical malpractice action arising out of the substandard care and treatment rendered to Russell Corkum by the defendant, Thomas Ng, M.D. Russell Corkum is a 26 year old male who underwent bilateral thoracoscopic sympathectomies performed on 3/14/05 by Dr. Thomas Ng at the Providence Veterans Administration Medical Center.[1] This procedure has left him with significant and severely disabling injuries.

By way of background, Mr. Corkum was seen at the Providence Veterans Administration Medical Center on 3/10/04 for an initial primary care visit. Mr. Corkum was examined by Eugenie R. Keel, Nurse Practitioner (N.P.) and noted at that time to have moist palms. Ms. Keel, N.P. also noted Mr. Corkum had a history of hyperhidrosis

[1] Although the surgery was performed at the VA Medical Center, it is the Plaintiff's understanding and belief that Dr. Ng was not a federal employee and thus this action is not being brought under the Federal Tort Claims Act. Rather, the court has jurisdiction based on diversity as the Plaintiff is a resident of Massachusetts, the defendant is a resident of Rhode Island, and the amount in controversy exceeds $75,000.

with excessive sweating of the hands and feet. Ms. Keel, N.P. documented that Mr. Corkum had inquired about therapy options for excessive sweating of his hands and feet, which had been treated in the past with medication. A dermatology consult was ordered by Ms. Keel, N.P. for follow-up of Mr. Corkum's hyperhidrosis.

On 9/22/04, Mr. Corkum was seen by Amy Geng, M.D., dermatology resident. Dr. Geng documented that Mr. Corkum had worsening hyperhidrosis of his hands and feet, especially with anxiety. Dr. Geng further noted that Mr. Corkum's father also had some history of hyperhidrosis as a young man. It is noted by Dr. Geng that Mr. Corkum had tried two different medications (sertraline and robinol) and had experienced no relief of his symptoms. Dr. Geng discussed with Mr. Corkum treatment options available which included Drysol (Aluminum Chloride Hexahydrate)(topical treatment for hyperhidrosis), neurotransmitter depletion devices, botox, and surgery. In treatment of Mr. Corkum's hyperhidrosis, he started Drysol every night, a surgical consult was ordered, and Dr. Geng also noted that Mr. Corkum's current dose of sertraline would be increased (titrated up).

Mr. Corkum was seen by Hieu Ton-That, M.D., a general surgery attending physician on 11/3/04. Dr. Ton-That documented that Mr. Corkum complained of a long-standing history of hyperhidrosis that worsened with anxiety. Dr. Ton-That further noted that Mr. Corkum had tried drysol and anti-anxiety medications without relief of symptoms. Dr. Ton-That planned to check with Thoracic Surgery to see if surgery was something that could be performed on Mr. Corkum.

Mr. Corkum was seen by a surgical resident on 12/14/04 and surgery was scheduled for 1/3/05. Of note, due to scheduling issues Mr. Corkum's surgery was re-

scheduled for 3/14/05. Mr. Corkum was seen for a pre-operative history and physical on 3/1/05. Jennifer Ouellette, a surgical nurse practitioner, documented that Mr. Corkum's palms were reddened (erythematous) with profuse sweating. Ms. Ouellette, N.P. also noted that Mr. Corkum's father had a history of hyperhidrosis which resolved when he was in his thirties. Of note, Mr. Corkum was 23 years old. Mr. Corkum told Ms. Ouellette, N.P. that he was very active, that he worked out regularly and played on his college soccer team.

Mr. Corkum underwent a bilateral thorascopic sympathectomy on 3/14/05, performed by Thomas Ng, M.D., thoracic surgeon, at Providence VAMC. During the procedure the sympathetic nerves on both sides were clipped at the thoracic level 2-4 (T2-4) and dissected out (removed). A chest tube was inserted into both the right and left lungs. When the procedure was finished Mr. Corkum was taken to the recovery room and admitted to the Intensive Care Unit (ICU). Mr. Corkum was hospitalized for three days after his procedure. On 3/17/08, Mr. Corkum was released from Providence VAMC.

He continues to suffer from severe and permanent injuries as a result of the surgery including being unable to sweat from the chest up, extraordinary compensatory sweating from the chest down, limited ability to tolerate warm weather, and limited ability to exercise due to permanently lowered heart rate and blood pressure. These injuries are particularly problematic for Mr. Corkum as he was deployed in Afghanistan with the U.S. Army and upon his return was diagnosed with PTSD. His method of coping with this condition was strenuous exercise including running and playing soccer.

## II. <u>ELEMENTS TO SUSTAIN A MEDICAL MALPRACTICE CLAIM</u>

1. Medical malpractice can be more simply defined as medical negligence. It is the same negligence as in everyday life. A failure to exercise reasonable care for the safety of another constitutes negligence. Negligence may result from not doing something that a reasonably prudent person would have done or from doing something that a reasonably prudent person would not have done under the same or similar circumstances.

   *Dunning v. Kerzner*, 910 F.2d 1009 (1st Cir. 1990) (applying Rhode Island law).

2. An injury or damage is proximately caused by an act, or a failure to act, whenever it appears from a preponderance of the evidence, that an act or omission played a substantial part in bringing about or in actually causing the injury or damage; and that the injury or damage was either a direct result or a reasonable probable consequence of the act or omission. In other words, an act or omission is the proximate cause of an injury if it immediately causes or fails to prevent an injury.

   *Schenck v. Roger Williams General Hospital*, 119 R.I. 935, 382 A.2d 514 (1977).

3. The Plaintiff need not establish to an absolute certainty that the Defendant was the sole factor in causing harm to Russell Corkum. The plaintiff need not exclude every other possible cause of the plaintiff's injuries. All the plaintiff needs to show is that the negligence of the Defendant was a substantial factor in causing injury to Russell Corkum or was a significant contributing cause of harm to Russell Corkum.

   *Lebon v. B.L. & M. Bottling Co., Inc*., 114 R.I. 750, 339 A.2d. 272 (1975). *Gray v. Stillman White Co., Inc*., 522 A.2d 737 (R.I. 1987). *Skaling v. Aetna Ins. Co*., 742 A.2d 282 (R.I. 1999).

4. If expert testimony from an expert witness is to have any evidentiary value, it must speak in terms of "probabilities" rather than mere "possibilities."

   The Plaintiff need not establish to an absolute certainty that the Defendant's negligence, was the sole factor in causing Russell Corkum's injuries and damages; all the Plaintiff needs to show is that it can be said to a reasonable degree of medical certainty, that is, to a medical probability, that the negligence of the defendant caused Russell Corkum's injuries.

   *State v. Peabody*, 611 A.2d 826 (R.I. 1992); *Gray v. Stillman*, 522 A.2d 737 (R.I. 1987); *Morgan v. DiBiase*, 121 R.I. 826, 403 A.2d 1080 (1979); *Mullaney v. Goldman*, 121 R.I. 358, 398 A.2d 1133 (1979*); Beauvais v. Notre Dame Hospital*, 120 R.I. 271, 387 A.2d 689 (R.I. 1978).

5. Physicians are required by law to conform their conduct when treating patients to an accepted standard of care. A physician is under a duty to use the degree of care and skill that is expected of a reasonably competent practitioner in the same class to which he belongs, acting in the same or similar circumstances. If it is found that Dr. Ng, a surgeon, failed to conform to the accepted standard of care for a surgeon when he performed a bilateral thorascopic sympathectomy on Russell Corkum, then Dr. Ng should be found negligent.

   *Sheeley v. Memorial Hospital*, 710 A.2d 161 (R.I. 1998).

6. The determination of whether a defendant was negligent requires a comparison of the defendant's conduct against a standard of accepted conduct.

   The defendant in this case is Thomas Ng, M.D., a surgeon. Specialists in a given field of medicine represent that they will have and employ not merely the knowledge and skill of a general practitioner but, that they will have and employ the knowledge and skill normally possessed and used by the average specialist in that field. Thus, when a physician holds himself out as a specialist and undertakes perform a surgical procedure on a patient, the law imposes a duty upon that physician to have and to use that degree of knowledge and skill which is normally possessed and used by the average specialist in that field. This standard of care governs a physician's conduct at all times while a patient is under her care.

   *Sousa v. Chaset*, 519 A.2d 1132 (R.I. 1987); *Schenck v. Roger Williams General Hospital*, 119 R.I. 510, 382 A.2d 514 (1977).

7. A physician has a duty to avail himself of all the scientific means and facilities available to him so that he can obtain the best factual data upon which he can make a diagnosis of a patient. When a physician fails to conduct a test or otherwise fails to utilize the scientific means of diagnosis at his disposal, and there is competent evidence that indicates other skilled physicians in similar circumstances would have employed such resources, then the physician has not complied with the standard of care required by law.

   *Dunning v. Kerzner*, 910 F. Supp. 1009 (1st Cir. 1990); *Schenck v. Roger Williams General Hospital*, 119 R.I. 510, 382 A.2d 514 (1977); *Wilkinson v. Vesey*, 110 R.I. 606, 295 A.2d 676 (1972).

8. While the very nature of providing medical care requires the exercise of a certain amount of professional judgment, this does not insulate a medical care provider from liability in all circumstances. A medical care provider is liable not only for failing to exercise reasonable care in treating a patient, but also for the failure to use his or her best judgment.

   *Bigney v. Fisher*, 26 R.I. 402, 59 A. 72 (1904).

9. The plaintiff, Russell Corkum, is entitled to recover damages including medical expenses, past and future bodily pain, loss of function, mental anguish, and emotional distress suffered as a result of the defendant's negligence. The plaintiff is also entitled to recover loss of earnings and lost earning capacity proximately resulting from the defendant's negligence.

    R.I. Gen. Laws § 10-7-1.1; R.I. Gen. Laws § 10-7-5; R.I. Gen. Laws § 10-7-7; *Cioe v. Pennacchia*, 143 A.2d 288, 88 R.I. 133 (1958); *Arlan v. Cervini*, 478 A.2d 976 (R.I. 1984); *McCabe v. Narragansett Elec. Lighting Co.*, 26 R.I. 427, 59 A. 112 (1904).

10. The doctrine of informed consent imposes a duty on a doctor which is completely separate and distinct from his responsibility to comply with the standard of care in performing his professional responsibilities. Doctors have a duty to provide adequate and meaningful informed consent to patients. Patients, not doctors, get to decide the course of their own medical care and treatment. Doctors must know what ri9sks are associated with alternative courses of treatment, and adequately explain those risks to patients. Russell Corkum's informed consent was not obtained by the defendant prior to the surgery. Notwithstanding that the standard boilerplate forms were signed, the defendant failed to adequately explain the risks associated with the surgery and the potential adverse outcomes.

    *Wilkinson v. Vesey*, 110 R.I. 606, 295 A.2d 676 (1972); *Medeiros v. Yaher*, 588 A.2d 1038 (1991); *Miller v. Rhode Island Hospital*, 625 A.2d 778 (1993)

Respectfully submitted,
The plaintiff,
By his attorney,

/s/ William J. Thompson

William J. Thompson
Lubin & Meyer, P.C.
100 City Hall Plaza
Boston, MA 02108
(617) 720-4447
RI ID#: 5947